UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

LEOTIS B. BRANIGH III,

                Petitioner,

vs.

ALICIA CARVER, Warden ISCC,

                Respondent.

Case No. 1:24-cv-00247-BLW

**MEMORANDUM DECISION
AND ORDER**

Petitioner Leotis B. Branigh III, an Idaho Department of Correction (IDOC) inmate, is pursuing a habeas corpus petition under 28 U.S.C. § 2254. Respondent Tim Richardson has given notice that he is no longer Petitioner's custodian. Dkt. 27. The Court has substituted new warden Alicia Carver as Respondent. Pending before the Court is Respondent's Motion for Partial Summary Dismissal, asserting that some of Petitioner's claims are procedurally barred. The Court now addresses all pending motions.

**REVIEW OF MOTION FOR PARTIAL SUMMARY
DISMISSAL: PROCEDURAL DEFAULT**

**1. Background**

A detailed recitation of Petitioner's state court criminal proceedings is included in Respondent's briefing. *See* Dkt. 16-1. The Court will mention only those procedural facts

**MEMORANDUM DECISION AND ORDER - 1**

relevant to the claims at issue. In a criminal case in the Second Judicial District Court in Nez Perce County, Idaho, Petitioner was charged with the first degree murder of Michael S. Johnston, who died by gunshot wound on October 1, 2007. *See* State's Lodging A-1 at 75.

Petitioner began the case represented by counsel—first Robert J. Van Idour and William Fitzgerald and then Charles Kovis. *See* State's Lodging A-1. However, on the morning of trial in 2008, Petitioner and Kovis had a disagreement about the strategy of the case, and Petitioner believed Kovis was not prepared. After questioning by the Court, Petitioner decided to represent himself, with Kovis as advisory counsel.

Petitioner was convicted of first degree murder and use of a firearm. On April 10, 2009, he was sentenced to a fixed life sentence for murder and a concurrent fifteen-year term for use of a firearm.

Petitioner filed several unsuccessful post-trial motions, including a motion for a new trial under *Brady v. Maryland*, 373 U.S. 83 (1963), during representation by new post-trial counsel, Robert Kwate. *See* State's Lodging A-13.

Petitioner was represented on direct appeal by state appellate public defenders Sarah E. Tompkins and Justin M. Curtis. Petitioner did not prevail on direct appeal. *State v. Branigh*, 313 P.3d 732 (Idaho Ct. App. 2013) (found at State's Lodging B-5).

Petitioner next filed a pro se post-conviction petition. He asserted constitutional due process, equal protection, fair trial, and ineffective assistance of counsel claims

**MEMORANDUM DECISION AND ORDER - 2**

(including an assertion that advisory counsel was ineffective during Petitioner's self-representation). State's Lodging C-1 at 19-37. Attorney Joanna M. McFarland was appointed to represent Petitioner in the initial post-conviction proceeding. She did little to nothing on the case. *See* State's Lodging C-2 at 7-19. The state filed a motion to dismiss the petition, asserting that a pro se defendant could not bring ineffective assistance of counsel claims against his advisory counsel, which the court granted on August 25, 2015. State's Lodging C-1 at 89-100. A final judgment was entered on August 31, 2015. *Id*. at 102.

Petitioner wrote to the state district court on December 8, 2015, stating that he had just received a copy of the order of dismissal and final judgment entered in August 2015. State's Lodging C-1 at 112-114. He was unaware that McFarland had been appointed to represent him and reported she had a conflict of interest. Petitioner filed a motion to alter or amend the judgment on that basis on December 21, 2015. *Id*. at 115-25.

McFarland filed a motion to withdraw, which was granted on January 4, 2016. *Id*. at 134. Attorney Paige M. Nolta was appointed to represent Petitioner on February 18, 2016. *Id*. at 138. Nolta began conducting discovery. *Id*. at 140-146. The state district court vacated the final judgment and withdrew the order of summary dismissal on May 23, 2016. *Id*. at 147.

Nolta filed a motion to amend the petition for post-conviction relief on November 30, 2016. State's Lodging C-1 at 161.

**MEMORANDUM DECISION AND ORDER - 3**

The amended petition included four claims, including new ineffective assistance of counsel (IAC) claims regarding Kovis's pretrial performance:

(1) Fundamental error by the court due to an invalid waiver of counsel, based on failure to make an mental health inquiry.

(2) Ineffective assistance of counsel claims, including:[1]

a) nine new pretrial/pre-self-representation IAC claims against Kovis: trial counsel (i) was unprepared for trial, (ii) *should have moved for a continuance once he learned Branigh intended to proceed pro se or should not have informed Petitioner that the trial court would not grant a continuance if he decided to proceed pro se*, (iii) should have moved for a change of venue, (iv) should have requested a continuance when the trial court reversed itself on the suppression of cell phone records issue, (v) *allowed a conflicted juror to remain*, (vi) *failed to adequately subpoena witnesses*, (vii) *did not disclose to the State any witnesses properly in a Discovery Compliance form*, (viii) failed to prepare defense exhibits; and (ix) <u>failed to communicate with Petitioner regarding changes in strategy and tactics</u>;

b) two advisory counsel IAC claims against Kovis;

c) two post-trial motion IAC claims against Kwate; and

d) two direct appeal IAC claims against Tompkins, Curtis, and/or Kwate.

(3) Cumulative error.

(4) Violations to Petitioner's U.S. Constitutional Rights, and

---

[1] Only the italicized subclaims were raised in the initial post-conviction appeal by attorney Dennis Benjamin, which is important to the discussion addressed below. On remand, the state district court granted relief on the underlined subclaim, which was not included in the initial post-conviction appeal; as a result, the grant of relief was vacated on the second appeal (after remand).

**MEMORANDUM DECISION AND ORDER - 4**

Idaho State Constitutional Rights.

State's Lodging C-1 at 165-170.

In response to the amended petition, the state renewed its prior summary dismissal motion. *See* Dkt. C-1 at 245. On May 30, 2017, the State filed a supporting brief that did not address the new pretrial IAC claims raised in the amended petition. State's Lodging C-1 at 244-258.

On July 13, 2017, the state district court summarily dismissed Petitioner's amended post-conviction petition, including Claim 2(a), the ineffective assistance claims prior to self-representation. State's Lodging C-1 at 260-279. But Claim 2(a) was never briefed by the State, and the state district court did not give the required 20 days' notice to Petitioner that it was going to dismiss the amended petition on grounds not briefed by the State. A "Final Judgment" signifying that the dismissal was sua sponte was entered on August 2, 2017: "JUDGMENT IS ENTERED AS FOLLOWS: ~~The State's Motion for Summary Disposition is GRANTED and~~ All claims contained within the Petition for Post-Conviction relief are hereby DISMISSED." *Id*. at 279.

On appeal, through counsel Dennis Benjamin, Petitioner raised a single issue— that the district court erred in dismissing Claim (2)(a) on grounds not argued by the state and without giving 20 days' notice of its intent to dismiss sua sponte. State's Lodging D-1 at 2. The State agreed to a remand to allow Petitioner proper notice of the grounds for summary dismissal of those claims. State's Lodging D-2 at 3. The Idaho Supreme Court

**MEMORANDUM DECISION AND ORDER - 5**

then remanded Petitioner's case for further proceedings on the issues raised in the appellate briefing and suspended the appeal. State's Lodging D-3. The remand order did not specifically provide for re-opening the case. *See* Dkt. F-7 at 7.

On remand, the state district court denied the State's motion for summary dismissal and scheduled an evidentiary hearing. Kovis passed away after the case was remanded and before the evidentiary hearing. *See* State's Lodging F-3 at 6. He was never deposed, and it is unclear what his trial strategy was or what his response to Petitioner's allegations of deficient performance would have been. *Id*. at 13. As a result, the state district court found there was little or nothing to rebut Petitioner's evidence presented at the evidentiary hearing. State's Lodging C-1 at 142. The district court granted postconviction relief on Claim 2(a)(ix), concluding that Kovis failed to communicate a change in trial strategy to Petitioner, which led to a breakdown in the attorney-client relationship, which resulted in Petitioner representing himself unprepared and without necessary witnesses at trial. *Id*. at 141-142.

The State appealed after the grant of relief on remand. State's Lodging F-2. The Idaho Court of Appeals determined that "the State raised and preserved the issue of the finality of the district court's judgment as to all but the five specifically listed issues raised in the initial appeal," meaning that all claims other than the five specific ineffective assistance issues were waived and could not be addressed on remand because they were not raised in the initial appeal. State's Lodging F-7 at 6. Because Petitioner did

not preserve the change of strategy/tactics subclaim in the initial appeal, the Court of Appeals ruled that the state district court had no jurisdiction to consider that subclaim on remand, and therefore it erred in granting relief on that subclaim. *Id*. at 4-8.

In the alternative, the Idaho Court of Appeals addressed the merits of the change of strategy/tactics claim and reversed the state district court's decision granting post-conviction relief on that claim, finding that Petitioner had not shown that Kovis performed deficiently. State's Lodging F-7 at 8-10. The appellate court did not reach the prejudice prong. *Id*. at 10. The Idaho Supreme Court denied Petitioner's petition for review. State's Lodging F-10.

## 2. Standards of Law

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

A. *Ineffective Assistance of Counsel*

The clearly established law governing a claim of ineffective assistance of counsel (IAC) is found in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on an IAC claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. As to the second prong, "prejudice" means there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

Effective legal assistance on appeal does *not* mean that appellate counsel must appeal every question of law or every nonfrivolous issue requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). "Nothing in the Constitution" requires "judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client." *Id*. at

754. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52.

To show prejudice with respect to direct appeal counsel, a petitioner must show that his appellate attorney failed to raise an issue obvious from the trial record that probably would have resulted in reversal. *Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989). If a petitioner does not show that an attorney's act or omission would probably have resulted in reversal, then he cannot satisfy either prong of *Strickland*: appellate counsel was not ineffective for failing to raise such an issue, and petitioner suffered no prejudice as a result of it not having been raised. *Id.* at 1435.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

### B.  *Habeas Corpus Exhaustion Requirement*

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a *federal* claim to the *highest* state court for review *in the manner prescribed* by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

State court remedies are considered technically exhausted, but not properly exhausted, if a petitioner failed to pursue a federal claim in state court and no state remedies remain available. *Id*. at 848. Or, improper exhaustion can occur when a petitioner tried to pursue a federal claim in state court, but the state court rejected it on an adequate and independent state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). To qualify as an adequate procedural ground that prevents a federal court from hearing a federal claim arising from a state court criminal case, "a state rule must be firmly established and regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (internal citation and punctuation omitted). That is, the state procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar can be considered adequate if it is a discretionary rule, even though "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009).

A state procedural bar is "independent" of federal law if it is not interwoven with or does not rest on federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003). A rule will not be deemed independent of federal law "if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *Id*.

MEMORANDUM DECISION AND ORDER - 10

(internal quotation marks and alteration omitted); *see also Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) (holding that a state waiver rule is not independent where, "[b]efore applying the waiver doctrine to a constitutional question, the state court must rule, either explicitly or implicitly, on the merits of the constitutional question").

Improper exhaustion, including application of an adequate and independent state procedural bar, renders a claim "procedurally defaulted" for federal habeas corpus purposes. *Coleman*, 501 U.S. at 731. Habeas corpus relief cannot be granted on a procedurally defaulted claim unless the petitioner shows either (1) legitimate cause for the default and prejudice resulting from the default, or, alternatively, (2) the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.* If the petitioner cannot meet one of these exceptions, the federal district court's only options are to dismiss the claim on procedural grounds or deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2).

    1)  <u>Cause and Prejudice Exception to Procedural Default</u>

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked

to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

An attorney's errors that rise to the level of a violation of the Sixth Amendment's right to effective assistance of counsel may, under certain circumstances, serve as a cause to excuse the procedural default of other claims. *Murray*, 477 U.S. at 488. For example, if the procedural default is due to an appellate attorney's decision to omit it from the appeal and that decision is determined to be ineffective assistance of direct appeal counsel (IADAC) under *Strickland*, that IADAC claim can serve as cause to excuse the default of another claim, but only (1) if the IADAC claim was separately presented to the highest state court on post-conviction review, or (2) if the IADAC claim itself is procedurally defaulted *and* the petitioner shows another level of cause and prejudice to excuse the default of the IADAC claim. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Errors of counsel made on *post-conviction review* that cause the default of other claims generally *cannot* serve as a basis for cause to excuse a petitioner's procedural default of his claims. *See Coleman*, 501 U.S. at 752. This rule arises from the principle that a petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).

The case of *Martinez v. Ryan*, 566 U.S. 1 (2012), established a limited exception to the *Coleman* rule. In *Martinez*, the court held that inadequate assistance of counsel in

the initial-review collateral review proceeding may establish cause for a prisoner's procedural default of a claim of ineffective assistance of trial counsel (IATC). *Id*. at 9. As explained in *Trevino v. Thaler,* the *Martinez* test consists of four elements: (1) the IATC claim is "substantial"; (2) the "cause" was "no counsel" or "ineffective" counsel during post-conviction proceedings; (3) the IATC default occurred in the "initial" review proceeding; and (4) state law required that the IATC claim be raised in an initial review collateral proceeding." *Trevino*, 569 U.S. 413, 423 (2013) (citing *Martinez*, 566 U.S. at 13-14).

An IATC claim is substantial under *Martinez* if it meets the general habeas certificate of appealability standard—that the claim has "some merit." *See Martinez*, 566 U.S. at 14 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003) (adopting the standards for a certificate of appealability ("COA")); *see also Leeds v. Russell*, 75 F.4th 1009, 1018 (9th Cir. 2023). In *Miller-El*, the Court articulated that the standard for issuance for a COA is that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." 537 U.S. at 336. The COA determination "requires an overview of the claims … and a general assessment of their merits," which "does not require full consideration of the factual or legal bases adduced in support of the claims." *Id*.

MEMORANDUM DECISION AND ORDER - 13

In *Shinn v. Ramirez*, 596 U.S. 366 (2022), the United States Supreme Court limited the federal district court's ability to entertain new evidence or hold evidentiary hearings to determine cause and prejudice, observing that "there is no point in developing a record for cause and prejudice if a federal court cannot later consider that evidence on the merits," and that where a petitioner cannot meet § 2254(e)(2),[2] a "*Martinez* hearing would serve no purpose," providing "reason to dispense with *Martinez* hearings altogether." *Id*. at 389 (citing *Holland v. Jackson*, 542 US. 649, 653 (2004) (per curiam)). "*Martinez* did not prescribe largely unbounded access to new evidence whenever postconviction counsel is ineffective," the *Ramirez* Court clarified. *Id*. at 387.

The *Martinez* exception applies only to procedurally defaulted claims of ineffective assistance of trial counsel (IATC). The exception has not been extended to other types of claims. *See Davila v. Davis*, 582 U.S. 521, 535 (2017) (*Martinez* not applicable to ineffective assistance of direct appeal counsel claims); *Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013) (*Martinez* not applicable to defaulted *Brady* claims).

---

[2] Section 2254(e)(2) provides that, "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless he meets several stringent elements set forth in § 2254(e)(2)(A)(i) or (ii) and (e)(2)(B). The statutory phrase "failed to develop the factual basis of a claim" means that "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id*. at 437; *see also Hurles v. Ryan*, 752 F.3d 768, 791 (9th Cir. 2014) ("A petitioner who has previously sought and been denied an evidentiary hearing has not failed to develop the factual basis of his claim.").

MEMORANDUM DECISION AND ORDER - 14

2)  <u>Miscarriage of Justice Exception to Procedural Default</u>

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, he can still raise the claim if he demonstrates that the court's failure to consider it will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991), *superceded on other grounds by statute*. A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray*, 477 U.S. at 496. To show a miscarriage of justice, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Where the petitioner pleaded guilty and did not have the evidence in his case evaluated by a jury, he must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (secondary citations omitted).

## 3.  Procedural Default Discussion

Respondent argues that Claims 1, 2, 4, 7, 9, and 10 are procedurally defaulted, as well as all claims grounded on Fourteenth Amendment equal protection grounds.

**MEMORANDUM DECISION AND ORDER - 15**

C. *Claim 1*

Petitioner has clarified Claim 1 is a Sixth Amendment right to effective assistance of counsel for Kovis's failure to assert that the trial court should have held a full hearing under *Faretta v. California*, 422 U.S. 806 (1975), to determine whether he was competent to represent himself at trial. Dkts. 3 at 9 & 22 at 2. He states he does not intend to bring a *Faretta* trial court error claim. McFarland did not raise this claim in the initial post-conviction action. Nolta raised only a trial court error claim based on the same facts in a propose second amended petition after remand, but her motion to amend was denied, with denial upheld on appeal. *See* State's Lodging E-2 at 42, 120; State's Lodging F-7 at 7.

Because Petitioner did not properly present the merits of the IATC *Faretta* claim to the Idaho Supreme Court, it is procedurally defaulted.

Petitioner asserts that the *Martinez* exception applies, because his initial post-conviction counsel failed to raise the claim. This assertion meets the second and third elements of the *Trevino* test. The fourth is met because Idaho requires that IATC claims be raised in an initial post-conviction proceeding.

The Court now reviews the claim to determine whether the first *Trevino* element for application of *Martinez* is met—is the IATC claim substantial? Because the state court judge had a well-developed record upon which to determine the issue, including questioning Petitioner's attorney at the time the competency issue was raised in state

court, this Court concludes that the facts found by the state district court are entitled to deference and that new evidence, even if the *Ramirez* standard is met, is not necessary.

The question is whether Kovis had sufficient information in December 2008 at the beginning of the jury trial, when the court had its colloquy on Petitioner's request to proceed pro se, to raise an objection that the trial court could not properly adjudicate the *Faretta* self-representation issue without probing Petitioner's mental health disorders. The court asked Petitioner if he had ever been diagnosed or treated for a mental illness, and Petitioner responded that he had been diagnosed with narcissistic personality disorder and a delusional disorder mixed type in 2000. State's Lodging A-11 at 116. There was no further discussion about the mental disorders. *Id*. at 117. Kovis did not object.

Kovis (and the trial court) had three sets of information available at the time Petitioner requested to proceed to the jury trial pro se with advisory counsel only. One set was Petitioner's pattern of violence to cope with life problems; the second was Petitioner's interactions with legal counsel; the third was Petitioner's mental health evaluations.

      1)  <u>Pattern of Coping with Life Problems</u>

Kovis knew of a pattern of acts in jail records showing that, when Petitioner wanted something, he often implemented unreasonable and sometimes dangerous ways of getting what he wanted. Because this pattern became more pronounced during

**MEMORANDUM DECISION AND ORDER - 17**

Petitioner's pretrial detention, jail officials and the prosecution questioned whether he had a mental health issue that might affect his competency to proceed to trial.

Kovis began representing Petitioner in mid-March of 2008. On May 9, 2008, the prosecutor filed a motion for a psychological evaluation of Petitioner on the grounds that "the State has reason to believe that the Defendant lacks the mental capacity necessary to assist his attorney in his defense." State's Lodging A-2 at 194. The motion relied on the supporting affidavits of prosecutor Daniel L. Spickler and jail commander Lieutenant Steve Lutes. *Id*.

The Spickler affidavit states that Petitioner had a history of mental illness and "[o]ver the last two months, defendant's behavior has deteriorated into frequent bouts of violence, causing property damage to the jail, endangering the health and safety of jail staff and other inmates, and ultimately requiring jail personnel to resort to tasering defendant and resulting in defendant being bound and chained to a restraint chair." State's Lodging A-6 at 26. The Spickler affidavit is not based on personal knowledge but draws from the Lutes affidavit. *Id*. at 28. Attached to the Lutes affidavit are multiple incident reports involving Petitioner's dangerous conduct at the Nez Perce County Jail. *Id*. at 32-75.

The Spickler affidavit states that Petitioner threatened to kill his original public defender or hurt the public defender's family. State's Lodging A-6 at 26. Supporting jail records attached to the Lutes affidavit show that, on February 8, 2008, Petitioner

**MEMORANDUM DECISION AND ORDER - 18**

informed jail staff that he no longer wanted to see his lawyer (Fitzgerald). Petitioner allegedly said, "I would rather do 5 years in prison for beating the shit out of my lawyer than life for something I didn't do." *Id*. at 50.

On February 22, 2008, attorney William Fitzgerald asked jail staff to restrain Petitioner with belly chains and shackles prior to their attorney-client meetings because he feared Petitioner might hurt him. *Id*. at 50-51. Despite the threat, the fear, and the security measures, Fitzgerald never asserted that Petitioner was mentally incompetent to aid in his criminal defense.

On July 28, 2008, Petitioner filed an "Objection and Motion to Strike" the affidavits of Spickler and Lutes as containing false, prejudicial, libelous, slanderous" hearsay; he asserted that none of the alleged facts had been subjected to a due process analysis. State's Lodging A-2 at 13-14. Petitioner disputed that he lacked sufficient present ability to consult with his attorney with a reasonable degree of rational understanding or that he lacked a rational and factual understanding of the proceedings against him. *Id*. at 14. He moved to strike the affidavits. *Id*. at 16.

While the prosecutor and jail commander had good reason to bring the issue of Petitioner's mental health and competency to aid in his defense before the Court, Petitioner's pattern of resolving life difficulties and his anger issues that included threatening his public defender did not necessarily mean that he could not rationally consult with counsel or participate in his own defense; it meant that he could not resolve

**MEMORANDUM DECISION AND ORDER - 19**

disagreements with others without resorting to violence. That is a different issue. The records attached to the Lute affidavit show that Petitioner's acts of violence were not limited to his public defender or criminal defense, but that they covered his living conditions, jail staff, and other inmates.

> 2) Petitioner's Ability to Aid his Attorney or Proceed Pro Se

Kovis also had access to the state court record containing filings that occurred prior to his appointment to the case. Petitioner had filed several pro se complaints and requests to proceed in forma pauperis before the prosecutor filed the motion for a psychological evaluation.

On December 5, 2007, the trial court set the pretrial motion deadline for January 25, 2008. *See* State's Lodging A-1 at 78-79. When Petitioner saw this deadline looming, and Fitzgerald had not filed various motions Petitioner had asked him to file, Petitioner began notifying the court that his criminal defense attorney should have been doing more to protect Petitioner's rights. Nothing in the record indicates that Petitioner's acts were taken as a result of delusion or narcissistic tendencies, rather than out of caution and diligence. In other words, it is not clear from the record that Fitzgerald was performing effectively as to the filing of pretrial motions.

Petitioner notified the court that he preferred to proceed pro se only if his counsel did not begin to perform more effectively and take certain actions that Petitioner believed were necessary to his defense. Petitioner's pro se filings during the course of his

MEMORANDUM DECISION AND ORDER - 20

representation were clear, pointed, and generally reasonable. Petitioner's notifications included the following.

On January 7, 2008, Petitioner filed a pro se "motion for hearing to request bond" with a request for oral argument. State's Lodging A-1 at 84. In his motion, Petitioner complained that he had asked defense counsel multiple times to take certain actions, and the actions were not taken. *Id*. at 86.

On January 18, 2008, just seven days before the pretrial motion deadline, Petitioner filed an Affidavit in support of Termination of the Services of Fitzgerald and Van Idour, Attorneys at Law. State's Lodging A-6 at 19. He states the attorneys had not provided him with copies of relevant discovery, he has been unable to speak to them by phone, and motions had not been filed. *Id*. at 20. Petitioner wrote: "Affiant believes that either the authors of Article 6 of the United States Constitution, nor the Idaho Appellate Courts interpret the word 'assistance' to mean that a criminal Defendant is required in any way, to relinquish control of his/her Defense to counsel assigned to a criminal case." *Id*. at 21. "This Affiant cannot adequately prepare a Defense in this case, nor adequately assist Defense Counsel in this case without first having access to discovery as needed and having the necessary Motions/Legal actions, filed in a timely fashion to ensure the effectiveness of the defense." *Id*. at 21. "Affiant is therefore terminating the services of Fitzgerald ad Van Idour who have been unable or unwilling to comply with Affiant's

**MEMORANDUM DECISION AND ORDER - 21**

requests and/or decisions concerning Affiant's defense. Id. He also filed a "Notice of Termination" of the lawyers. *Id*. at 22.

On January 25, 2008 (the deadline), Petitioner filed a "motion for hearing before resource judge." State's Lodging A-1 at 124. One of the issues included was to decide the motion to authorize retention of psychiatrist. *Id*. at 127. At that time, Petitioner indicated he was representing himself. *Id*. at 125.

On the deadline date, Fitzgerald filed a motion to extend the pretrial motion deadlines in the case, asserting that Petitioner's motion to represent himself still needed to be heard by the court. *Id*. at 128. It was not until the deadline that Fitzgerald filed a motion to exclude cell phone text messages—a motion that was critical to the defense. *Id*. at 132. Petitioner need not have waited until the deadline to file his motions to attempt to protect his interests.

On January 30, 2008, the trial court held a hearing on the pending motions. Petitioner reported that Fitzgerald was not filing timely motions. State's Lodging A-1 at 135. Petitioner reasonably questioned why Fitzgerald filed a bare motion to dismiss without a supporting legal memorandum. State's Lodging A-6 at 27. Petitioner preferred to be represented by "effective counsel"; otherwise, he said he would represent himself. State's Lodging A-1 at 134. The Court questioned Petitioner about his mental health; education; and his experience with criminal trial, law, and procedures. State's Lodging A-11 at 21-22. The court questioned Fitzgerald about what he had done in Petitioner's

**MEMORANDUM DECISION AND ORDER - 22**

defense and ordered him to work with Petitioner to eliminate his concerns. State's Lodgings A-6 at 16 & A-11 at 23. Fitzgerald stated that he has also filed additional motions. *Id*. At the end of the hearing, Petitioner clarified that he was not seeking to represent himself at that time. State's Lodging A-11 at 24. The court extended the deadlines for pretrial motion filings.

On March 3, 2008, Fitgerald requested leave to withdraw from the case due to a conflict of interest. State's Lodging A-1 at 162. Fitzgerald was also representing Steven Peak, who was identified as a material witness in Petitioner's case. *Id*. at 164. Kovis was appointed to replace Van Idour and Fitzgerald.

Between March and May 2008, Petitioner did not file any pro se motions but allegedly continued to make trouble at the jail. As noted above, on May 9, 2008, the prosecutor filed the motion for a psychological evaluation of Petitioner. On May 12, 2008, Petitioner appeared with Kovis to respond to the motion. State's Lodgings A-1 at 198 & A-11 at 42. Kovis stated at the hearing:

> Mr. Branigh and I have a good relationship, we talk, I think he's fully capable of assisting in his defense. I don't see any reason whatsoever for him to have a psychological exam. I think the standard here is whether or not he can assist in the defense. Mr. Branigh certainly can do that and I'm at a loss to figure out why other than the fact that maybe they want to have him incarcerated at some other place as a reason for having a psychological exam. But he's helping me, I think he knows who I am and what we are doing, so I don't have anything else.

State's Lodging A-11 at 42.

**MEMORANDUM DECISION AND ORDER - 23**

In its written order, the court used the standard from *Dusky v. United States*, 362 U.S. 402, 402 (1960): "The test to determine whether a criminal defendant is competent to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." State's Lodging A-1 at 203. The court characterized the prosecution's evidence as showing that Petitioner had "been less than a model inmate," but failing to show that the *Dusky* standard was met. *Id*. In denying the motion for a psychological evaluation, the court reasoned that it "must accord the greatest weight to the arguments of defense counsel Charles Kovis, as he has met with Defendant Branigh on numerous occasions and is in a better position to evaluate whether the Defendant appears to understand the charge brought against him and is able to assist in his defense." *Id*. The court relied on Kovis's representation that, "if he had any doubt regarding his client's competency, he would have brought his own motion for psychological evaluation." *Id*.

Later, Petitioner complained of Kovis's failure to comply with Petitioner's requests for discovery, motion practice, and trial preparation. On June 30, 2008, Petitioner filed a pro se "Objection, Notice of Error, and Motion for Hearing under Seal," with an oral argument request. He also filed a pro se "Motion for Waiver of Idaho Criminal Rule 12(c) Requirement." State's Lodging A-2 at 5, 10.

**MEMORANDUM DECISION AND ORDER - 24**

On July 28, 2008, Petitioner filed a pro se "Motion for Waiver of Idaho Criminal Rule 12(c) Requirement" (that all filings must be typewritten and properly formatted). State's Lodging A-2 at 18. His affidavit said that he was not presently comfortable with defense preparations under the current trial schedule and that he did not intend to go to jury trial until defense preparations have been thoroughly and effectively made. *Id*. at 22. Petitioner wanted counsel to file multiple motions. *Id*. Petitioner stated he felt like he was being forced to go to trial without the defense being litigated thoroughly and effectively. *Id*. He stated: "Affiant is hereby notifying this Honorable Court that if affiant's Defense preparations are not thoroughly and effectively made by Defense Counsel, this affiant will seek to represent himself." *Id*. at 23.

On October 31, 2008, Petitioner went on a hunger strike, in protest of his conditions of confinement and Kovis's alleged inability and/or unwillingness to keep scheduled appointments, carry out legal tasks, prepare and file motions in a timely manner. As part of this protest, he stated he would not eat or drink until these issues were resolved. State's Lodging A-7 at 138. This information was provided to the court in a letter, and it is unclear what transpired later.

On December 8, 2008, jury selection for trial occurred. See State's Lodging A-11 at 55, *et seq*. Just after selection, and outside the presence of the jury, Petitioner told the court that Kovis was unprepared for trial and that Petitioner disagreed with Kovis's decision to change the entire defense strategy at the last minute without involving

**MEMORANDUM DECISION AND ORDER - 25**

Petitioner in that decision. *Id*. at 113. Petitioner requested that he be permitted to proceed

pro se, that he be given some time that morning to prepare for trial, and that he be

appointed advisory counsel. State's Lodgings A-5 at 9 & A-11 at 113. Upon questioning,

the court clarified Petitioner's request:

> Q.     Answer my question. Do you want an attorney to represent you or do you not want an attorney to represent you?

> A.     Yes, your Honor, I do want an attorney to represent me.

> Q.     Alright. Well, as we have discussed before, Mr. Branigh, that's [sic] two different things. You are either asking to represent yourself or you are asking to have an attorney represent; now which is it?

> A.     I'm asking to represent myself, your Honor.

> Q.     Alright. So you don't want an attorney representing you?

> A.     I'm not going to have an attorney represent me if they are not going to represent me in the manner that I think is tactically sound to this case, your Honor.

> Q.     Alright. Well, alright, tell me again why you feel that Mr. Kovis is not prepared to try this case.

> A.     Well, for one, your Honor, because we have – Mr. Kovis and I have discussed trial strategies and different various things that we, you know, had – I thought intended to address at trial, questioning of individual witnesses and things o that nature, your Honor. And there's exhibits that I have discussed with Mr. Kovis about acquiring for the trial. I don't' think he' acquired those exhibits, your Honor. There is [sic] a lot of things.

**MEMORANDUM DECISION AND ORDER - 26**

> Q.    Well, that's what I'm here for is to hear those, Mr. Branigh, you need to tell me what they are.
>
> A.    [Y]our Honor, I don't want to discuss my trial strategy.
>
> Q.    I'm not asking you to tell – to discuss trial strategy. My question was why do you feel that Mr. Kovis is not prepared to try this case?
>
> A.    Because I don't feel that he's done the things that I have asked him to do to prepare tactically for the things that we have discussed that we were going to address at trial.

State's Lodging A-11 at 113-114.

Petitioner then discussed how the court changed its mind about admissibility of the cell phone text messages in the midst of Kovis's trial preparation, and that having those messages admitted required Kovis to change his trial strategy. Petitioner stated, "I'm not blaming Mr. Kovis for what I'm saying he's not prepared for, I mean Mr. Kovis has been run [sic] ragged traying to prepare for this stuff, your Honor. The Motion for Reconsideration [of admissibility of text messages] that the prosecution filed at the last hour complicated things, your Honor, in that I mean it effectively changed the trial strategy and everything else that was going on and Mr. Kovis was busy trying to deal with that." *Id*. at 114. The court gave Petitioner time to discuss this matter with Kovis. Petitioner again stated he was going to represent himself, and the court questioned him mainly about his competence to represent himself. *Id*. at 114-116.

The court asked Petitioner if he had ever been diagnosed or treated for a mental illness, and Petitioner responded that he had been diagnosed with narcissistic personality

**MEMORANDUM DECISION AND ORDER - 27**

disorder and a delusional disorder mixed type in 2000. Id. at 116. There was no further discussion about the mental disorders.

In finding Petitioner competent to make the decision to represent himself, the court noted

> He has provided me with the basis for that decision as being a desire to pursue certain trial strategies which Mr. Kovis disagrees with, but it is Mr. Branigh's right to a trial and Mr. Branigh's trial in this matter. So, within the rules, he should have the right to pursue certain of those strategies. So I am – I believe that Mr. Branigh's decision is knowing[;] I believe it is also voluntary. He's not stated any compulsion that he's feeling in order to do this other than to try to pursue what he has evaluated as strategies which he wants to pursue during the course of this trial.

Id. at 117. Presumably, the lack of "compulsion" for his decision was the trial court's way to address the lack of any mental health impetus for his decision.

In post-trial proceedings, on October 4, 2010 (two years later), Petitioner continued to complain of Kovis's inability to help him obtain evidence for a motion for new trial. State's Lodging A-7 at 150 to 152. Petitioner wrote, "Affiant enjoys working with Mr. Kovis, though not necessarily under the present circumstances, and does not intend this affidavit to be a waiver of the attorney/client privilege." Id. at 165. Kovis submitted an affidavit stating that, because Petitioner was asserting IATC of Kovis, the attorney-client relationship had deteriorated to the extent that new counsel should be appointed. Id. at 169-170. Afterwards, attorney Robert Kwate was appointed. Id. at 176.

MEMORANDUM DECISION AND ORDER - 28

3) <u>Mental Health Evaluations of Petitioner</u>

The third set of facts Kovis had to draw from were recent mental health evaluations of Petitioner. On October 9, 2007, Attorney Robert Van Idour filed a motion to authorize retention of a psychiatrist to evaluate Petitioner to determine whether he could assert an insanity defense under new United States Supreme Court case law. State's Lodging A-1 at 36-37. Van Idour's supporting affidavit stated that Petitioner "has presented with mental illness issues in past contacts with the legal system." *Id.* at 37. Counsel did not specify which mental health professional would provide these services or how much it would cost, and, thus, the request was not granted. State's Lodging A-1 at 140.

On June 3, 2008, the court issued an order allowing defense counsel to hire Dr. Craig Beaver, Ph.D., to examine Petitioner under I.C. § 18-207. *Id.* at 206. Dr. Beaver determined that Petitioner was not delusional. *Id.* at 296. Because Dr. Beaver's opinion was not helpful to the defense, counsel did not request that Dr. Beaver write a report.

The following information was not available to Kovis when Petitioner waived his right to counsel for the jury trial, but it shows what might have been raised had Kovis objected to Petitioner being found competent to proceed pro se without a further psychological evaluation for purposes of permitting Petitioner to proceed pro se. During the post-conviction hearing after remand in 2022, Dr. Beaver testified that he reviewed the colloquy between Petitioner and the trial judge that was the basis for the decision that

**MEMORANDUM DECISION AND ORDER - 29**

Petitioner was able to adequately participate in his criminal defense and permitted to proceed to trial pro se. State's Lodging E-4 at 288-289. Dr. Beaver opined that Petitioner's narcissistic personality disorder would have prevented him from having "the capacity to review himself as having limitations in anything including being his own attorney." *Id*.

Dr. Beaver also opined that it would have been difficult to have any attorney represent Petitioner because he "felt that he knew what was right and what things were irregardless [sic] of what his attorney or the investigator thought." *Id*. at 291.

Dr. Beaver said, in his review of the transcript, "I don't know if I would say that there's something that really throws up a red flag in and of itself." *Id*. at 292. Dr. Beaver opined that if he would have been asked the question in 2008 whether Petitioner was competent to represent himself, he "would have said no" because he didn't think Petitioner "could intelligently weigh the advantages versus disadvantages of representing himself." *Id*. at 294.

4) <u>Analysis and Conclusion</u>

Of these three sets of information Kovis could draw from to assess whether he should object to the court's colloquy that did not probe Petitioner's narcissistic and delusional personality disorders, none provided Kovis with sufficient facts to support such an objection. Petitioner and Kovis got along well, Petitioner helped Kovis in preparation of the defense, and Petitioner had not threatened Kovis. Dr. Beaver did not

**MEMORANDUM DECISION AND ORDER - 30**

find Petitioner delusional in 2008. (Even revisiting Petitioner's condition in 2022, Dr.

Beaver did not actually point to any "red flags" in the competence colloquy showing that

Petitioner's narcissistic personality disorder prevented him from adequately representing

himself at trial. ) The colloquy shows that Petitioner cogently articulated the legal

disadvantages of his self-representation as being untrained in the law, being unfamiliar

with the Rules of Evidence, and being "unfamiliar with the exact technical proper

procedures for a lot of trial issues." *See* State's Lodging A-11 at 115-116.

The entire record reflects that Petitioner rightly brought to the court's attention his

concerns that several of his attorneys had not provided adequate representation, including

Fitzgerald, Kovis, and McFarland. These concerns were reasonable given that these

attorneys may have done less than what was essential to Petitioner's defense. These

concerns clearly were not born of delusion or a narcissistic view that Petitioner could

perform better than any attorney, anywhere, anytime. Rather, Petitioner asked to proceed

pro se only if counsel continued to perform in a less-than-average manner; it was the only

way he could see to protect his interests. Petitioner described that the trial court's last-

minute change of mind to admit Petitioner's inculpatory cell phone text messages caused

Kovis to re-think the trial strategy. Petitioner did not fault Kovis, but desired a different

strategy, including a comprehensive defense including many witnesses. Again, no

delusion or narcissism appeared to affect Petitioner's observations and decision-making.

**MEMORANDUM DECISION AND ORDER - 31**

The state district court relied on the *Faretta v. California*, 422 U.S. 806, 807 (1975), standard to make its decision: "first of all I have to make a determination as to whether or not Mr. Branigh would be competent to make that decision [to waive his right to counsel] and whether that decision is, in fact, knowing and voluntary and intelligent." State's Lodging A-11 at 117; *Faretta*, 422 U.S. at 835 ("in order to represent himself, the accused must 'knowingly and intelligently' forgo the benefits of having counsel, and "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'").

Nothing in the record shows that Petitioner's narcissistic personality disorder overrode his reasoning to the extent that his behavior would have not meet the *Dusky* or *Faretta* standard for competence. He clearly relinquished counsel based on a disagreement with his counsel on strategy, and nothing in the record showed any compulsion due to a mental illness. Petitioner did not articulate that he could proceed better than counsel, as Dr. Beaver speculated might be the case with a narcissistic defendant, but Petitioner instead (1) articulated that he desired to proceed differently than counsel, despite his lack of legal knowledge, and (2) asked for advisory counsel to help him bridge that gap.

Nothing shows Kovis had reason to come forward and question Petitioner's ability to aid in his defense because of a mental disorder—beginning with his response to the

prosecution's motion for a psychological examination in June 2008, through Kovis's

work with Petitioner on post-conviction matters in 2010.

Petitioner's performance at trial does not support the position that he was

incompetent to choose to proceed to trial pro se or incompetent to represent himself at

trial, as Respondent argues:

> Even before he sought to represent himself, Branigh filed
> numerous pro se pleadings, some with attachments and
> citations to rules and cases, that support the trial court's
> conclusion that he was competent to represent himself.
> (State's Lodgings A-1, pp.73-75, 113-16; A-2, pp.309-22,
> 225-27; A-5, pp.973-80, 1021-33; A-6, pp.1136-39.)
> Additionally, Branigh gave an well-stated opening statement
> (State's Lodging A-11, pp.463-67); made objections during
> witnesses' testimony, many that were sustained (id., p.485,
> 488, 494, 496, 501-02, 514, 519, 521, 529, 530-31, 534-339,
> 625, 647, 669-70, 674-77, 681-84, 698, 701-04, 724-26, 731-
> 32, 734-37, 742, 744, 747-46, 752-54, 756, 759-64, 804, 806,
> 819-20, 827-29, 831-32, 836, 842-53; State's Lodging A-12,
> pp.870-72, 875, 878-79, 881, 884, 886, 888, 902-04); cross-
> examined witnesses (State's Lodging A-11, pp.541-86, 589,
> 594-95, 599-600, 614- 18, 626-30, 640-43, 652, 665-67, 684-
> 87, 705-22, 726-27, 765-88, 797-802, 805-10, 814-18, 822-
> 23, 833, 837; State's Lodging A-12, pp.888-901, 904-06);
> argued for a judgment of acquittal citing the relevant criminal
> rule (State's Lodging A-12, pp.907-12, 988-92, 1059-69) and
> a motion for new trial (id., pp.1072-92, 1099-1005), called
> and examined witness (id., pp.913-18, 922-38, 941- 47, 949-
> 974), and gave a closing argument discussing the evidence
> from the trial and the jury instructions (id., pp.1031-41).
> There is no indication of bizarre or obtrusive behavior during
> the trial. Rather it appears Branigh followed court decorum,
> was respectful, and simply did his best to represent himself
> without any legal training. There is simply nothing in the
> record to support the notion that Branigh was incompetent to

**MEMORANDUM DECISION AND ORDER - 33**

> represent himself, let alone that Kovis should have objected
> to self-representation based upon competency.

Dkt. 26 at 17-18. While this record was not available to Kovis or the trial court to pre-

determine whether Petitioner should have been permitted to represent himself, it does

provide evidence that no prejudice resulted from Kovis's failure to pursue an

incompetency objection at the beginning of trial to argue that Petitioner was not

competent to make the decision to proceed pro se or to represent himself.

This Court concludes that, based on the entire record available to Kovis and the

trial court, Kovis did not perform deficiently by failing to raise the issue, and no

prejudice resulted from failing to assert that defense. For these reasons, Petitioner has not

met the first element of *Trevino* to show that *Martinez* should be applied to excuse the

default of Claim 1. Alternatively, even if the Court disregards the default and considers

the merits of this claim under *Strickland*, it fails. There is insufficient evidence to show

either deficient performance or prejudice under either a "substantial" lesser COA

standard or a more difficult *Strickland* merits review standard.

### B. *Claim 2*

Claim 2—with all of its subclaims—is that Kovis was ineffective before and

during the jury trial, as appointed counsel and in his advisory role. Dkt. 3 at 12.

Respondent is correct in contending that, in the initial post-conviction appeal, Petitioner

did not raise a challenge to the merits of any IAC claim, but instead raised a general

claim that the state district court did not follow the proper procedures when it summarily

**MEMORANDUM DECISION AND ORDER - 34**

dismissed five of the pretrial IATC claims: Kovis (1) should have moved for a continuance once he learned Petitioner intended to proceed pro se; (2) erroneously advised Petitioner the court would not grant a continuance; (3) allowed a conflicted juror to remain; (4) did not provide a Discovery Compliance disclosing any witnesses; and (5) failed to adequately subpoena witnesses.

The Court agrees that the merits of these IATC claims were not preserved in the first post-conviction appeal. Nor did counsel attempt to preserve them on appeal after remand, with the exception of Claim 2(a)(ix), upon which the district court had granted relief on remand. But because the Idaho Court of Appeals decided that the state district court had no jurisdiction to adjudicate Claim 2(a)(ix) on the merits on remand, this claim remains procedurally defaulted.

Notwithstanding the trial court's jurisdiction error, on remand the Idaho Court of Appeals nevertheless alternatively decided Claim 2(a)(ix), the strategy/tactics IATC claim, on the merits. Unfortunately for Petitioner, even if a state court reached the merits of a federal claim in the alternative, federal habeas review is barred where "the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989)[3]; *see also Zapata v. Vasquez*, 788 F.3d 1106, 1112

---

[3] Moreover, a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 2108 (1935). In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

**MEMORANDUM DECISION AND ORDER - 35**

(9th Cir. 2015), relying on *Loveland v. Hatcher*, 231 F.3d 640, 643–44 (9th Cir. 2000) (holding that, when "reliance upon [the state court's] procedural bar rule was an independent and alternative basis for its denial of the petition, review on the merits of the petitioner's federal constitutional claim in federal court is precluded").

The Court concludes that all of the other IAC subclaims included in Claim 2 were procedurally defaulted at the *appellate stage* of post-conviction proceedings. Therefore, *Martinez* does not apply. The Court also notes that omitting a claim on appeal does not necessarily equal ineffective assistance. Here, Benjamin's obvious strategy on appeal was to pave the way for Nolta to address the chosen claims on the merits on remand. The part Benjamin played in Petitioner's post-conviction case was successful because the State immediately capitulated to a remand. And, he was not ineffective for omitting Claim 2(a)(ix), the strategy/tactics subclaim, because the Idaho Supreme Court alternatively decided it had no merit. *See* State's Lodging F-7 at 8-10.

This Court agrees that the Idaho Supreme Court's alternative ruling on the merits of the strategy/tactics subclaim is a correct application of *Strickland*, and this Court also alternatively denies that subclaim on the merits.

Further, no facts are present that would support a legal excuse for the default of the other IATC claims, which rests on post-conviction appellate counsel. Therefore, the other IATC subclaims are subject to dismissal with prejudice.

**MEMORANDUM DECISION AND ORDER - 36**

### C. *Claim 4*

Claim 4 appears to be a duplicate of Claim 3 (a *Brady* claim) wrapped in a failure to grant a motion for a new trial claim, but Claim 4 partially rests on Idaho Code § 19-2406 as the basis of Fifth and Fourteenth Amendment due process violations. The Idaho Court of Appeals addressed this claim under *Brady*, holding that "the district court improperly applied to his motion state law standards for entitlement to a new trial for newly discovered evidence articulated in *State v. Drapeau*, 97 Idaho 685, 691, 551 P.2d 972, 978 (1976), instead of the more liberal standard established by the United States Supreme Court in *Brady*." State's Lodging B-5 at 23.

Petitioner cannot separately bring a claim that the state district court erred under the state law standard, because the Idaho Court of Appeals already concluded that applying the state law standard was in error, and so there is nothing to contest. In addition, as Respondent argues, habeas review is an improper forum for challenging a state law standard. Habeas corpus relief cannot be granted on the grounds that a conviction or sentence violates the state constitution or state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("Federal habeas corpus relief does not lie for errors of state law."); *see also Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994) (noting that generally federal habeas corpus is unavailable for alleged errors in interpretation and application of state law).

This claim will be dismissed with prejudice for failure to state a federal claim upon which relief can be granted.

### D. *Claim 7*

Claim 7 is that Petitioner's due process rights were violated when the state court admitted State's Exhibits 4 and 64 (his cellular telephone records) without conducting an IRE 404(b) analysis. Respondent argues that "federal habeas corpus relief does not lie for errors of state law," *Lewis*, 497 U.S. at 780, and "a state court's interpretation of state law … binds a federal court sitting in habeas corpus," *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). Further, a state law issue cannot be transformed into a federal claim by merely raising a due process violation because "alleged errors in the application of state law are not cognizable in federal habeas corpus." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

To challenge the admissibility issues on appeal, Petitioner's counsel raised several federal arguments in state appellate proceedings, including Title 18 U.S.C. § 2703 and the Fourth Amendment to the United States Constitution. State's Lodging B-1 at 31-32. But these are not the legal grounds for the claim Petitioner brings on federal habeas corpus[4] review. Here, he asserts that the state district court's failure to conduct a state

---

[4] A decade after Kovis's 2008 litigation of the suppression issue in this case, the United States Supreme Court held that 18 U.S.C. § 2703(d), the Federal Stored Communications Act, was unconstitutional because it allowed law enforcement officers to obtain cell phone records with a showing that fell "well short of the probable cause required for a warrant." *Carpenter v. United States*, 585 U.S. 296, 317 (2018). In this case, on reconsideration, the district court agreed with the State that the federal statute authorized the out-of-state service of the warrant and therefore reversed its earlier ruling on the suppression motion. *See* State's Lodging B-5, at 3-4. On appeal, the Idaho Supreme

**MEMORANDUM DECISION AND ORDER - 38**

evidentiary rule analysis before admitting the cell phone records worked a federal due process violation. In his petition for review, Petitioner argued only state law, not any federal due process grounds. State's Lodging B-7 at 36-37.

To the extent Petitioner is raising a new federal due process issue not raised before the Idaho Court of Appeals, Claim 7 is procedurally defaulted. The *Martinez* exception does not apply, and no *Coleman* grounds exist. To the extent that he is raising a state law claim only, Claim 7 does not rest on federal grounds and fails to state a claim. It is subject to dismissal with prejudice for all of these reasons.

### E. *Claim 9*

Claim 9 is that Kovis was ineffective in litigating the Fourth Amendment suppression claim. *See* Dkt 22 at 12. On direct appeal, Petitioner raised a substantive Fourth Amendment claim regarding his cell phone records, State's Lodging B-1 at 23-32, and that theory is Claim 8, discussed below, but he did not raise it with a Sixth Amendment IAC overlay on post-conviction review. *See* State's Lodging C-1 at 165-171.

IAC claims require additional factual development to meet the additional elements of that claim and thus are distinct from substantive claims. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) ("[T]he fact that the ineffectiveness claim was raised at some

---

Court did not address the federal statute, but addressed the claim on Fourth Amendment grounds. It concluded that the Idaho search warrant was supported by adequate probable cause and did not infringe on Petitioner's privacy interests any more than a warrant issued by a Kansas state court, where Sprint's offices were located. *Id*. at 13-15.

**MEMORANDUM DECISION AND ORDER - 39**

point in state court does not mean that the state court was given the opportunity to address the underlying issue that the attorney in question neglected to raise."); *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) (explaining that the difference between substantive and ineffective assistance of counsel claims is both in nature and in the requisite elements of proof); *Atkins v. Bean*, 122 F.4th 760, 781 (9th Cir. 2024) ("a fairly-presented ineffective assistance claim does not on its own exhaust an underlying substantive claim").

Petitioner argues that an external cause for the procedural default is that the state appellate court did not address all of the reasons argued before the state district court. He may be referring to the appellate court's statement that, "[o]n appeal, Branigh abandons his argument below that the warrant was illegally served or executed by the officer and now argues that by issuing a warrant to obtain the records located in Kansas, the magistrate court exceeded its authority under I.C.R. 41(a)." But IATC cannot be raised on direct appeal, and it was not raised on post-conviction review by McFarland or Nolta. Because the Idaho Supreme decided that the underlying suppression claim had no merit, Petitioner is unable to show prejudice for the default of this claim. Therefore, Claim 9 is procedurally defaulted without excuse.

### F. *Claim 10*

Claim 10 is that federal habeas corpus relief should be granted based on cumulative error, given the "effect of all the constitutional violations in this case." Dkt. 3

at 24. Cumulative error was raised in the amended petition for post-conviction relief, State's Lodging C-1 at 166, but it was never raised in any appellate court. Consequently, Claim 10 is procedurally defaulted.

This is not an IATC claim and therefore it does not fit the *Martinez* exception. The procedural default is the fault of direct appeal counsel if Petitioner's claim is that trial court errors only (not to include IAC claims) warranted relief on direct appeal. But because the IADAC was not raised on post-conviction review, then it cannot serve as cause unless Petitioner can show another level of cause and prejudice for the default of the IADAC claim, as required by *Edwards*. Petitioner has not made a *Coleman* showing for the IADAC claim.

If Petitioner is asserting that all of the alleged IAC and non-IAC errors should be cumulated with alleged trial court errors in a cumulative error analysis, then that cumulative error claim was raised by Nolta in the amended post-conviction petition, but discarded in both appeals. Therefore, the procedural default is the fault of post-conviction appellate counsel, and *Martinez* does not apply. Nor has Petitioner shown *Coleman* cause. Therefore, this claim is procedurally defaulted without excuse.

### G. *Equal Protection Allegations*

Petitioner raises Equal Protection Clause arguments as to each of his claims. He states that the state courts ruled on his claims in ways that transgressed state precedent. He does not cite cases to support this argument.

MEMORANDUM DECISION AND ORDER - 41

Some equal protection claims were raised in Petitioner's pro se petition for post-conviction relief, State's Lodging C-1 at 22, but that petition was replaced in full by the amended petition that did not contain any equal protection claims. *Id*. at 165-171. In addition, Petitioner raised no Equal Protection Clause claim in either appeal. *See* State's Lodging B-1 and D-1. Consequently, all equal protection claims are procedurally defaulted.

Petitioner has not shown any excuse for the default of these claims. They are not *Martinez* IATC claims. Petitioner has not set forth any *Coleman* ground for cause. The equal protections claims are subject to dismissal with prejudice.

### H. *Actual Innocence*

A showing of actual innocence can excuse the procedural default of a claim. Plaintiff asserts vaguely that he "has never had the chance to present a proper Defense to a Jury to make a showing of actual innocence." Dkt. 22 at 17. However, he was notified of the standard for making a *Schlup* showing of actual innocence to excuse procedural default several times in this litigation. He has not made a *Schlup* showing. He cannot rely on legal grounds to show actual innocence. It must be factual innocence. The cell phone records and witness testimony quite clearly show that Petitioner had motive to and did kill Michael Johnston because he disagreed with Desiree Anderson's decision to end her romantic relationship with Petitioner in favor of her relationship with Johnston, her ex-husband with whom she had children.

**MEMORANDUM DECISION AND ORDER - 42**

On direct appeal, the Idaho Court of Appeals recognized that the prosecutor engaged in misconduct during closing argument and also improperly withheld exculpatory evidence from Petitioner, but held that "this misconduct was harmless error because the evidence of Branigh's guilt was so compelling that we are confident the result of the trial would have been the same had the misconduct not occurred." State's Lodging B-5 at 26. Upon a review of the state court record, this Court agrees. Here, Petitioner has not shown actual innocence necessary to excuse the procedural default of his claims.

## REVIEW OF MOTION FOR PARTIAL SUMMARY DISMISSAL: NON-COGNIZABILITY

Claim 8 is that the State illegally obtained Petitioner's cellular telephone records with an invalid warrant in violation of the Fourth Amendment. Dkt. 3 at 19. Respondent argues that this claim is subject to dismissal on non-cognizability grounds.

Federal law is clear that, when the state court has provided a defendant with an opportunity for full and fair litigation of a Fourth Amendment claim, it may not be relitigated by a federal district court in a habeas corpus action, "regardless of its view of the correctness of the state decision." *Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir. 1977) (relying on *Stone v. Powell*, 428 U.S. 465, 481–82 (1976) (Fourth Amendment issues are not cognizable on federal habeas review)); *Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986).

Thus, the threshold issue for a Fourth Amendment claim is whether the petitioner had an initial opportunity for a fair hearing in state court. *See Caldwell*, 781 F.2d at 715. The narrow question is "whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996); *see also Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990). The petitioner bears the burden of establishing that the state courts did not consider the Fourth Amendment claim fully and fairly. *Mack*, 564 F.2d at 901.

Here, Petitioner filed a motion to suppress his cell phone records. State's Lodging A-2 at 306-07, a supporting affidavit with numerous attachments, *id*. at 308-495, and a supporting brief, State's Lodging A-3 at 496-504. The state district court held a hearing and initially granted Petitioner's motion to suppress. State's Lodgings A-4 at 752-757 & A-11 at 170-181. When the state filed a motion for reconsideration, *id*. at 763-826, Petitioner's counsel could have filed a written response but chose to wait until the motion was argued to respond, which meant the State had less time to formulate a reply. State's Lodging A-11 at 225-36. The court held a hearing, where Petitioner presented his position. Afterwards, the state district court changed its decision and ruled that the records would not be suppressed. *Id*. at 235-238.

Petitioner raised the issue on direct appeal. State's Lodgings B-1 at 23-3 & B-3 at 4-16. The Idaho Court of Appeals held oral argument on the claim. *See* State's Lodging

**MEMORANDUM DECISION AND ORDER - 44**

B-5 at 1. Petitioner raised the claim again in a petition for review in the Idaho Supreme Court. State's Lodging B-7 at 23-34.

Petitioner argues that Kovis was busy preparing for trial when he was hit with the last-minute motion for reconsideration of suppression of the cell phone records, and that Kovis did not have adequate opportunity to brief the suppression issue. Petitioner states that the inability of Kovis to do more to mount a proper opposition to the motion for reconsideration rendered Petitioner's opportunity to present the Fourth Amendment issue to the trial court inadequate and unfair. However, as noted above, the narrow question is "whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval*, 81 F.3d at 899. Such an argument is an independent Sixth Amendment IATC claim (that Petitioner has, in fact, brought as Claim 9), but it cannot overcome the *Ortiz-Sandoval* threshold for a Fourth Amendment claim on the same facts.

Because Petitioner actually raised his Fourth Amendment claim in the state district court, participated in extensive briefing and argument there, and had attorneys represent him on review of the claim on the merits by the Idaho appellate courts, this Court concludes that he had a "full and fair opportunity" to litigate his Fourth Amendment claim as that term is defined by the Ninth Circuit Court of Appeals. Therefore, pursuant to *Powell*, Claim Eight is noncognizable and will be dismissed with prejudice.

**MEMORANDUM DECISION AND ORDER - 45**

## CONCLUSION

Claims 1, 2, 7, 9, and 10 are procedurally defaulted, as well as all claims grounded on Fourteenth Amendment equal protection grounds. No adequate legal excuse exists for the default of these claims.

Claim 4, addressing an alternative state legal basis for his *Brady* claim that was explicitly rejected by the Idaho appellate courts, fails to state a federal habeas corpus claim upon relief can be granted. Claim 7 alternatively fails to state a federal habeas corpus claim upon which relief can be granted. Claim 8 was fully and fairly litigated in state court and is not cognizable here. To the extent that the Court has not addressed each of Petitioner's arguments explicitly, they have been considered and rejected.

## ORDER

**IT IS ORDERED:**

1.     Respondent's Motion for Partial Summary Dismissal (Dkt. 16) is GRANTED as to Claims 1, 2, 4, 7, 8, 9, and 10.

2.     Respondent shall file an answer to the remaining claims **within 90 days** after entry of this Order. The answer should also contain a brief setting forth the factual and legal basis of grounds for dismissal and/or denial of the remaining claim. Petitioner shall file a reply (formerly called a traverse), containing a brief rebutting Respondent's answer and brief, which shall be filed and served **within 30 days** after service of the answer.

Respondent has the option of filing a sur-reply **within 14 days** after service of the reply. At that point, the case shall be deemed ready for a final decision.

3.    No party shall file supplemental responses, replies, affidavits or other documents not expressly authorized by the Local Rules without first obtaining leave of Court.

4.    No discovery shall be undertaken in this matter unless a party obtains prior leave of Court, pursuant to Rule 6 of the Rules Governing Section 2254 Cases.

5.    Respondent's Motions for Extensions of Time to File (Dkts. 23, 24) and Motions to Leave to File Excess Pages (Dkt. 25) are GRANTED.


DATED: February 4, 2026

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER** - 47